## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM CASSELLE, JR.<br>9122 Baltimore Ave, Apt. 5024<br>College Park, MD 20740<br><br>      Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE NAVY<br>1000 Navy Pentagon<br>Washington, DC 20350<br><br>      Defendant. | *<br>*<br>*<br>*<br>*<br>* **Civil Action No.  21-248**<br>*<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ADMINISTRATIVE PROCEDURES ACT COMPLAINT

### Introduction

This is an action seeking the reinstatement of Master at Arms Petty Officer First Class (MA1 -- E-6) William Casselle based on the unlawful, unsubstantiated, arbitrary, and capricious acts of the United States Department of the Navy ("the Navy" "the Agency" or "the USN") to involuntarily discharge him with an Under Other Than Honorable Conditions (UOTHC) service characterization after over 12 years of faithful service to his country.  On May 21, 2020, an administrative separation board hearing was convened at Tinker Air Force Base (AFB), Oklahoma.  This is despite MA1 Casselle, who was stationed at Naval Air Station (NAS) Patuxent River, Maryland, being denied the opportunity to attend the hearing other than through video teleconference (VTC).

Despite his request to attend in-person, consistent with the right afforded him through USN regulation, MA1 Casselle was forced to sit alone with his military defense counsel in a courtroom at the Navy Yard in Washington, District of Columbia (DC), staring at a video screen

as the hearing took place.  Meanwhile, the three board members (sitting much like a jury does) faced with deciding MA1 Casselle's fate over whether he should be retained or discharged, as well as the recorder (i.e., the representative on behalf of the USN - - essentially the Navy's prosecutor), all sat together in a courtroom in Oklahoma as the case was presented.

The fundamental unfairness of this situation, as objected to in advance of the hearing by MA1 Casselle's military defense counsel, proved to be worse than anticipated.  Repeatedly throughout the hearing, the connection cut in and out, leaving MA1 Casselle and his attorney entirely in the dark on what was unfolding halfway across the country between the board members and government counsel (e.g., the possibility of *ex parte* communications).  Even when the connection did not entirely cut out, it would lag and cause the words spoken in Oklahoma to be indiscernible, and the video quality was so poor that at times the board members could not be distinguished as anything more than shapes by MA1 Casselle and his attorney sitting in DC. Further, the webcam that MA1 Casselle and his attorney were forced to use allowed only one person to be pictured at a time.

Worse yet, the merits of the allegations entirely lacked the evidence necessary to substantiate the discharge.  So much so, that even the Department of Veteran's Affairs (VA) in a subsequent review of the case to determine benefits eligibility, concluded that "[t]he Board's findings were not supported by substantial evidence."  **Exhibit 1** at 3.

Nevertheless, the board concluded that MA1 Casselle should be discharge with the worst possible UOTHC service characterization, and the separation authority executed the discharge, effective July 13, 2020.  This is the final agency decision MA1 Casselle seeks to have declared by this Court overturned.

## NATURE OF THE ACTION

1.      This is an action seeking to set aside the involuntary discharge of Plaintiff from the USN, pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 701, et seq.

## JURISDICATION AND VENUE

2.      Jurisdiction vests with this court based upon the Agency's final action to involuntarily discharge MA1 Casselle with a UOTHC service characterization on July 13, 2020. *See* 5 U.S.C. § 704; *see also* 28 U.S.C. § 1331.

3.      Exhaustion of administrative remedies is not required under 10 U.S.C. § 1552. *See Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 7 (D.D.C. 2000) (citing *Darby v. Cisneros*, 509 U.S. 137, 154 (1993).

4.      Venue is proper in this Court pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(1)-(2), because the USN resides in and substantially conducts its affairs in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred at the Washington Navy Yard in DC, also within this judicial district.

## PARTIES

5.      Plaintiff is a former active duty E-6 of the USN, who resides in College Park, Maryland, following his involuntary discharge from the USN.

6.      Defendant is an agency and/or military department of the United States and, as such, a waiver of sovereign immunity exists and subjects the USN to the APA in this Court.  *See* 5 U.S.C. § 701, et seq.

## FACTS

7.      MA1 Casselle enlisted with the USN out of his hometown of Kansas City, Missouri as an E-1 on March 4, 2008.

8.      On June 18, 2008, MA1 Casselle started on active duty, serving continuously on active duty until July 13, 2020.

9.      As of 2020, after rising through the ranks following 12 years of service at multiple duty assignments (including the U.S. Ceremonial Guard), MA1 Casselle was a noncommissioned officer having reached the pay grade of E-6.

10.     Throughout his 12 years, MA1 Casselle regularly received high-marks and praise on his performance reports, being characterized as having "[u]nlimited potential," labelled "a superb performer," and his commanding officer even noted in November 2016 that MA1 Casselle "continues to exceed all expectations and has my strongest recommendation for selection to chief petty officer or any commissioning program."

11.     In July 2017, MA1 Casselle executed a three-year reenlistment contract, setting his new contract expiration date to July 27, 2020.

12.     In January 2018, MA1 Casselle reported to duty at NAS Patuxent River, Maryland.

13.     In January 2019, MA1 Casselle voluntarily extended his reenlistment contract by an additional six months, setting his contract expiration date to January 27, 2021, so as to match his expiration of active obligated service (EAOS) with his projected rotation date (PRD) for his next assignment.

14.     Later in and around September 2019, MA1 Casselle's command deemed he was deserving of the highly selective Limited Duty Officer (LDO) program, endorsing him for conversion to be a commissioned officer for the USN.

15.     The three officers who interviewed MA1 Casselle to determine whether he should be endorsed for the LDO program all concluded that MA1 Casselle was deserving of the highest, "Outstanding (1)" rating for his potential as a career naval officer.

16.     Suddenly, however, two sets of circumstances caused this to all come to a halt.

17.     First, MA1 Casselle was accused of sexually harassing a subordinate based on events occurring on October 29, 2019.

18.     From that allegation, a command directed investigation was initiated, and an Ensign (O-1) was appointed to serve as investigator.

19.     As a brand new officer, the Ensign had no specialized training to serve as an investigator, but rather, he was given a legal advisor to answer any questions that may have arisen.

20.     The Ensign interviewed nine people, including MA1 Casselle, his accuser, and other witnesses to the event.

21.     Other than providing a statement to the investigator, MA1 Casselle was given no opportunity at this time to confront the allegations or any of the other witnesses' statements.

22.     In a report dated November 8, 2019, the Ensign ultimately concluded to substantiate the sexual harassment allegations against MA1 Casselle and provided recommendations to the Officer in Charge on how to handle the matter.

23.     Then, February 29, 2020, MA1 Casselle's troubles continued, as allegations of assault were raised against him by his girlfriend (also a member of the USN) as they were going through a bad break up.

24.     MA1 Casselle's girlfriend claimed that MA1 Casselle had choked her, and sought a protective order based upon those claims.

25.     However, when MA1 Casselle's girlfriend went to police to lodge her complaint, they saw no indications of any visible injuries.

26.     MA1 Casselle immediately informed his command about the event.

27.     On March 3, 2020, MA1 Casselle consented to the protective order without any findings of abuse, as criminal allegations remained pending against him in St. Mary's County, Maryland.

28.     Despite the pending state criminal investigation,[1] the USN initiated another command directed investigation, and on March 2, 2020, another junior officer was appointed to conduct a preliminary inquiry into the events.

29.     Due to the pending criminal investigation, MA1 Casselle elected not to answer questions of the junior officer, and advised that he had an attorney, but he mentioned that he went to his girlfriend's house to grab his remaining things and that things did not go well, and it was just a bad breakup.

30.     The investigator spoke with others who were contacted after the incident by MA1 Casselle, his leadership, and personnel responsible for the St. Mary's County investigation. However, the investigator did not speak with MA1 Casselle's accuser.

31.     In similar fashion to the prior investigation, in a report dated March 10, 2020, this junior officer concluded to substantiate the allegation of assault against MA1 Casselle and recommended to proceed with disciplinary action.

32.     Based upon these two incidents, on March 13, 2020, MA1 Casselle's commanding officer initiated administrative discharge proceedings pursuant to Naval Military

---

[1] Eventually, on September 4, 2020, the state's attorney decided not to pursue the criminal charges and dismissed the case *nolle prosequi*.

Personnel Manual (MILPERSMAN) 1910-402, alleging the two incidents each supported "Separation by Reason of Misconduct - Commission of Serious Offense" as a basis for discharge, pursuant to MILPERSMAN 1910-142.

33.    Further, MA1 Casselle was notified that the USN would be pursuing the least favorable characterization of service, a UOTHC service characterization.

34.    Shortly after this notification of administrative discharge proceedings was served upon MA1 Casselle, due to COVID-19, many parts of the country went on lockdown, and the USN issued a stop-movement/no travel order.

35.    After being appointed a military defense counsel, MA1 Casselle's counsel and the prosecuting JAG (i.e., the recorder) began discussing the logistics of holding the discharge board hearing.

36.    Because MA1 Casselle's command was headquartered at Tinker AFB in Oklahoma, the separation authority and the prosecuting office of the Staff Judge Advocate (JAG) was also located there.

37.    Originally, prior to when the no travel order was issued, the USN intended to send the recorder to NAS Patuxent River to conduct the discharge board hearing there, however, due to the command's inability to arrange the recorder's travel, the discharge board hearing was delayed and then the no travel order was subsequently issued.

38.    Also, apparently, despite MA1 Casselle having extended his enlistment until January 27, 2021, the separation authority and prosecuting JAG were under the erroneous belief that MA1 Casselle's enlistment term (his EAOS) was ending on July 27, 2020.

39.    Thus, the USN was using this erroneous fact as the basis to justify why it was necessary to hold the discharge board hearing before July 2020 via VTC, because otherwise, as

the USN believed incorrectly, MA1 Casselle would be able to voluntarily discharge honorably by reaching his contract expiration before the USN had the opportunity to involuntarily discharge him with a less than honorable service characterization.

40.     Thus, rather than taking efforts to involuntarily extend MA1 Casselle beyond his supposed July 27, 2020 contract expiration date to afford him the due process of an in-person appearance before his discharge board, the USN decided to proceed through holding a VTC requiring MA1 Casselle to attend remotely.

41.     However, MA1 Casselle and his counsel vehemently objected to a VTC hearing, and in a letter dated April 29, 2020, raised this concern directly to the Commanding Officer who was convening the separation board.  *See* **Exhibit 2**.

42.     Citing USN regulation and federal case law, the letter stated that under MILPERSMAN 1910-516, Respondents have the right to "appear in person" before a discharge board, and that "Federal courts have gone so far as to overturn the results of boards where the respondent's right to be physically present was denied.  *Lewis v. United States,* 114 Fed. Cl. 682 (2014)."  **Exhibit 2** at ¶ 2.

43.     Accordingly, MA1 Casselle sought a waiver to be allowed to travel to his discharge board hearing and appear in-person with his military defense counsel, stating:

> MA1 Casselle is afforded specific rights at ADSEP [(administrative separation)] that are crucial to due process, and by exercising his right to be physically present at his ADSEP, he is simply invoking one. Appearing remotely undercuts MA1 Casselle's, and my, as his counsel, ability to build rapport with the members and denies the members the opportunity to evaluate his military bearing and character. Additionally, it is my belief that a remote or virtual appearance would not allow me to advocate effectively for MA1 Casselle. Appearance via VTC also impedes my ability to ensure a fair hearing; without being physically present, I have no means of verifying that ex parte communications between the recorder and the board members do not take place. This is in addition to bias caused by the natural psychological preference for someone in person.

**Exhibit 2** at ¶ 3.

44.     However, the USN denied MA1 Casselle's request by letter dated April 30, 2020.

45.     As part of the basis for why, the USN received an opinion from the Navy

Personnel's (PERS) legal office stating:

> Whether ADSEP boards will proceed as scheduled will be determined on a case-by-case basis by the show cause authority or the convening authority. In evaluating whether cases should proceed as scheduled, show cause authorities and convening authorities should consider postponing the case unless the member is approaching their retirement date or obligated service date or a board is otherwise required for operational reasons. From what you described, I think your ADSEP board falls into this category. Commands are encouraged to consider travel alternatives such as telephonic or video testimony for ADSEP boards.

**Exhibit 3** at 11.

46.     In explaining this to MA1 Casselle's military defense counsel, the prosecuting

JAG indicated that, "Based on [the PERS legal office's] response (which took into consider [sic]

MA1 Casselle's Jul 2020 EAOS), the [Commanding Officer] wants to move forward and

schedule the board and to [sic] it via VTC."  **Exhibit 3** at 11.

47.     The USN indicated it was also basing its decision relying on the Coronavirus Aid,

Relief and Economy Security (CARES) Act, stating that Federal courts were also relying on the

CARES Act to permit VTC hearings.

48.     However, the CARES act permitted such appearances only "under certain

circumstances and with the consent of the defendant," and it certainly did not apply to

circumstances involving trials/hearings on the merits.  **Exhibit 3** at 13.

49.     Notwithstanding, the USN proceeded with the original plan to have MA1 Casselle

and his military defense counsel appear via a VTC from a courtroom at the Navy Yard in

Washington, DC, while the recorder and three board members convened the hearing at Tinker

AFB in Oklahoma.

50.     However, this decision was made after an additional request by MA1 Casselle's military defense counsel was denied. Specifically, the military defense counsel advised that, "servicemembers have appeared, in person, before administrative separation boards within the National Capital Region since the initial Stop Movement Order was put in place. An option available to the Convening Authority was a request that members be provided from a local command to hear this case, however the Convening Authority refused to consider this option." **Exhibit 3** at 2, n.1.

51.     On May 21, 2020, the administrative separation board was held at Tinker AFB, outside the physical presence of MA1 Casselle, who was sitting in a courtroom alone with his military defense counsel at the Navy Yard.

52.     Once the hearing began, as MA1 Casselle's military defense counsel states:

[D]ue to the lack of true VTC capabilities, the remote appearance was conducted using Defense Collaboration Services (DCS). The result was a board in which picture quality was so poor that Counsel for the Respondent could not distinguish between board members other than as shapes; it was impossible to determine who was speaking, to make eye contact, or build rapport with individual members. Additionally, the Counsel for the Respondent could not ensure that no unauthorized persons intruded on the process or that unauthorized matters were not considered. This is counsel's obligation. In contrast, the Recorder was physically collocated with the members. The ability of the Recorder to speak directly to individual members and observe facial expressions and body language was completely unimpaired, both by the lack of audiovisual difficulties or the presence of facial masks.

**Exhibit 3** at 4.

53.     MA1 Casselle's counsel stated further:

Second, the board audio was conducted via a teleconference with all parties on speaker phone. At several points during the board, the audio glitched and sound was momentarily lost. Crucially, Counsel for Respondent had to ask numerous times during voir dire for the members to repeat answers they gave to questions. This process inhibited MA1 Casselle in his exercise of his right to challenge members for cause. While these windows of lost audio were relatively small, they rendered Counsel for the Respondent unable to guard against

10

ex parte communications or improper argument by the Recorder, or to hear conversations or comments made in a low tone or register that might have been prejudicial.

**Exhibit 3** at 4.

54.      In addition, MA1 Casselle's counsel stated:

Technical shortcomings also forced Counsel for the Respondent and MA1 Casselle to visually appear by a webcam. The physical space and capabilities of the webcam only allowed one individual to be in frame at a time, the end result being that the board members did not actually see MA1 Casselle until the majority of the board had concluded. The prejudice caused by this arrangement is obvious. Without the ability for the board members to see MA1 Casselle and vice versa, they were deprived of the ability to assess his military bearing and body language. It also prevented MA1 Casselle from building meaningful rapport with the board members.

**Exhibit 3** at 4.

55.      Despite these procedural due process issues, the Board proceeded, and ultimately concluded unanimously that MA1 Casselle should be discharged with a UOTHC service characterization.

56.      MA1 Casselle's military defense counsel immediately indicated on the findings worksheet of his intent to challenge the board's outcome through a Letter of Deficiency.

57.      On June 5, 2020, MA1 Casselle's military defense counsel submitted the Letter of Deficiency. *See* **Exhibit 3**.

58.      In addition to the issues expressed above, the letter discussed that even on the merits:

The findings returned by the board fall far short even of a preponderance standard. The first basis for separation was rebutted by multiple eyewitnesses called by the Counsel for Respondent, each of whom demonstrated the inaccuracy of key aspects of the investigation. Witnesses testified that the sailor who was supposedly sexually harassed never mentioned it at the time, and instead appeared at ease and comfortable. Multiple witnesses also testified that they had worked with MA1 Casselle for years, including in situations in which they were alone with him in isolated areas, and he never acted inappropriately. All agreed that the behavior described in the investigation was completely inconsistent with his character.

Testimony also established that her best friend, a sailor with a well-established and open grudge against MA1 Casselle, heavily influenced the individual who complained about MA1 Casselle's behavior.

The second basis is similarly unsupported by the weight of the evidence. The sole evidence that MA1 Casselle physically assaulted his former girlfriend is a police report that documented her allegations. In rebuttal, the former girlfriend's supervisor, the installation Security Officer, testified that she is frequently involved in physical altercations that she then misrepresents when questioned. He further described a specific incident in which she was involved in a physical fight with another sailor. When her version of events was compared to video footage, it became clear that her description was untruthful. Based on these observations, the witness testified that the complainant lacks integrity, and that he would assess her credibility as low.

Against this testimony, the Recorder offered nothing in response. The complainant did not testify, and no evidence was offered to rehabilitate her character for truthfulness. A mere accusation recited in a police report does not satisfy the preponderance standard. This is especially true in a scenario in which the complaining witness' credibility has been so thoroughly undermined by witness testimony.

**Exhibit 3** at 5.

59.     However, notwithstanding the appeal made through this Letter of Deficiency, the separation authority followed the recommendation of the separation board, and executed the UOTHC involuntary discharge, effective July 13, 2020.

60.     Then, during the processing of MA1 Casselle's claim for VA benefits eligibility, MA1 Casselle's matter was reviewed by that Department.

61.     The VA decided that MA1 Casselle's "military service for the period of June 18, 2008 through July 13, 2020, is honorable for VA purposes." **Exhibit 1** at 1.

62.     The VA concluded also that, "Neither basis was supported by the preponderance of the evidence, and procedural defects prohibited MA1 Casselle from presenting a full defense with due process of law." **Exhibit 1** at 3.

## CAUSES OF ACTION

## COUNT I

<u>Violation of the Administrative Procedures Act, 5 U.S.C. § 701, et seq.</u>

63.    Plaintiff incorporates the allegations set forth above as if fully stated in this Count.

64.    That the Agency violated the Administrative Procedures Act by improperly denying MA1 Casselle his right to appear in-person with counsel at his discharge board hearing.

65.    That such actions violated USN regulation, i.e., MILPERSMAN 1910-516, which afforded MA1 Casselle the right to "appear in person" before a discharge board.

66.    That such actions were arbitrary, capricious, an abuse of discretion and/or not in accordance with law, and/or without observance of procedure required by law (e.g., due process), or were otherwise in violation of 5 U.S.C. § 706.

67.    That because of such actions, MA1 Casselle was improperly involuntarily discharged from the USN with a UOTHC service characterization.

**WHEREFORE**, Plaintiff prays of this Court to:

A.    Declare unlawful and set aside the Agency's final action to involuntarily discharge MA1 Casselle with a UOTHC service characterization;

B.    Award Plaintiff costs and reasonable attorney's fees in this action pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412), or through any other legally applicable means; and

C.    And for such further and other relief as the nature of the cause may require.

**COUNT II**

<u>Violation of the Administrative Procedures Act, 5 U.S.C. § 701, et seq.</u>

68.     Plaintiff incorporates the allegations set forth above as if fully stated in this Count.

69.     That the Agency violated the Administrative Procedures Act by erroneously forcing a discharge board hearing to occur via VTC based on the false premise that MA1 Casselle's EAOS date was July 27, 2020, when it was in fact January 27, 2021.

70.     In addition, the Agency erroneously relied on the CARES act as a means to further justify its position for holding the discharge board via VTC, when the CARES act permitted remote appearances only "under certain circumstances and with the consent of the defendant."  *See* **Exhibit 3** at 13.

71.     That the CARES act exceptions employed by the Federal courts involved primarily preliminary type hearings, not those involving a full hearing on the merits.

72.     Further, that MA1 Casselle had repeatedly objected to being forced to attend his discharge board hearing via VTC, and therefore, did not consent.

73.     In addition, the Agency arbitrarily denied MA1 Casselle's request to have the discharge board hearing convened in or around the National Capital Region.

74.     That each of these actions, or all of them, of the USN to force the discharge board hearing through VTC were arbitrary, capricious, an abuse of discretion and/or not in accordance with law, and/or without observance of procedure required by law (e.g., due process), or were otherwise in violation of 5 U.S.C. § 706.

75.     That because of such actions, MA1 Casselle was improperly involuntarily discharged from the USN with a UOTHC service characterization.

**WHEREFORE**, Plaintiff prays of this Court to:

A.      Declare unlawful and set aside the Agency's final action to involuntarily discharge MA1 Casselle with a UOTHC service characterization;

B.      Award Plaintiff costs and reasonable attorney's fees in this action pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412), or through any other legally applicable means; and

C.      And for such further and other relief as the nature of the cause may require.

## COUNT III

Violation of the Administrative Procedures Act, 5 U.S.C. § 701, et seq.

76.     Plaintiff incorporates the allegations set forth above as if fully stated in this Count.

77.     That the Agency violated the Administrative Procedures Act by involuntarily discharging MA1 Casselle with a UOTHC service characterization when the allegations on the merits were unsupported by substantial evidence.

78.     That consistent with the determination made by the VA, "Neither basis was supported by the preponderance of the evidence, and procedural defects prohibited MA1 Casselle from presenting a full defense with due process of law."  **Exhibit 1** at 3.

79.     That such final action was arbitrary, capricious, an abuse of discretion and/or not in accordance with law, and/or without observance of procedure required by law (e.g., due process), and/or unsupported by substantial evidence, and/or was otherwise in violation of 5 U.S.C. § 706.

**WHEREFORE**, Plaintiff prays of this Court to:

A.      Declare unlawful and set aside the Agency's final action to involuntarily discharge MA1 Casselle with a UOTHC service characterization;

B.      Award Plaintiff costs and reasonable attorney's fees in this action pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412), or through any other legally applicable means; and

C.      And for such further and other relief as the nature of the cause may require.

<div style="margin-left: 50%;">

Respectfully submitted,

PATRIOTS LAW GROUP
OF LYONS & HUGHES, P.C.,


/S/Patrick J. Hughes
PATRICK J. HUGHES
DC Bar #: 1029733
5819 Allentown Road
Suitland, Maryland 20746
T: (301) 952-9000
F: (240) 699-8108
E: patrickhughes@patriotslaw.com
*Attorney for Plaintiff.*

</div>

Dated: January 27, 2021